| | | |
|---|---|---|
| **FRED L. BEARD** | ) | |
| **Plaintiff,** | ) | |
| **vs.** | ) | **MEMORANDUM AND** |
| | ) | **RECOMMENDATION** |
| | ) | |
| **MICHAEL J. ASTRUE,** | ) | |
| **Commissioner of Social Security,** | ) | |
| **Defendant.** | ) | |
| | ) | |

**THIS MATTER IS BEFORE THE COURT** on the Plaintiff's "Motion for Summary Judgment" (Document No. 12) and "Plaintiff's Memorandum Supporting..." (Doc. No. 13), filed by Fred L. Beard on August 7, 2008, and the Defendant's "Motion for Summary Judgment" (Doc. No. 14) and "Memorandum in Support of Summary Judgment" (Doc. No. 15), filed by the Commissioner of the Social Security Administration on August 28, 2008.

## I. BACKGROUND

The Plaintiff, Fred L. Beard, was born on October 9, 1969, completed high school, and has past work experience washing dishes as a "kitchen helper," doing odd jobs for Able Body Labor, and more recently, cleaning part-time at a college and at a construction site. (Tr. 17, 22, 29, 31, 39, 53). Plaintiff indicated that he helps his family with chores and takes care of his father and pets. His reported activities include driving his own car, going fishing, hunting with his bow and arrow in the mountains, riding his bicycle, going to the store, working on his go-car (sic), doing laundry, watching television, preparing meals, "hanging out with his friends," and doing household repairs and yard work for about four or five hours a week. (Tr. 21-22, 85-90). Indeed, he alleges no physical

limitations; his present claim for benefits is based entirely on alleged mental impairments.[1]

Mr. Beard has filed several previous unsuccessful applications for disability, including one on February 9, 1998 alleging an onset date of October 9, 1969. He was found "not disabled," and the application was denied. (Tr. 29). On September 24, 2004, he filed another application alleging disability as of September 1, 2001, due to attention deficit and hyperactivity disorder, borderline intellectual functioning, and a history of substance abuse (primarily alcohol).[2] This application was also denied. (Tr. 39).

On October 24, 2004, at the age of 34, Mr. Beard filed the present two applications, respectively 1) for a period of disability and disability insurance benefits under Title II and 2) for supplemental security income under Title XVI. 20 C.F.R. 404.1563 and 416.963 (defining a "younger" individual as age 18-44). Both applications claim an onset date of April 15, 2004, and allege disability due to attention deficit disorder, impulse disorder, borderline intellectual functioning, and "mood disorder not otherwise specified." (Tr. 14-16, 53-55, 82, 171-173).

These applications were denied initially and upon reconsideration (Tr. 5-7, 11-24). Mr. Beard requested an administrative hearing, which was held on November 30, 2006 before Administrative Law Judge ("ALJ") Daniel J. Stein. (Tr. 52, 190-210). The ALJ issued a decision on April 18, 2007, finding that Mr. Beard was not disabled. (Tr. 11-24). On November 9, 2007, the Appeals Council denied review, making the hearing decision the Commissioner's final decision. (Tr. 5-7, 9, 188-89). Mr. Beard sought judicial review on November 28, 2007, and the parties' cross-

---

[1]The ALJ noted that the treatment records of Mr. Beard's family doctor, Dr. Curtis Schultz, document no physical impairments. (Tr. 22).

[2]Plaintiff has a prior conviction for DWI. (Tr. 22).

motions for summary judgment are ripe for this Court's consideration.

## II. STANDARD OF REVIEW

The Social Security Act, 42 U.S.C. § 405(g) and § 1383(c)(3), limits this Court's review of the Commissioner's final decision to: (1) whether substantial evidence supports the decision, *Richardson v. Perales*, 402 U.S. 389, 390, 401 (1971); and (2) whether the Commissioner applied the correct legal standards. *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990); *Hunter v. Sullivan*, 993 F.2d 31, 34 (4th Cir. 1992) (per curiam). Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 390 (1971) (substantial evidence is "more than a scintilla and must do more than create a suspicion of the existence of a fact to be established"); *Smith v. Heckler*, 782 F.2d 1176, 1179 (4th Cir. 1986).

The Fourth Circuit has emphasized that it is not for a reviewing court to re-weigh the evidence or to substitute its judgment for that of the Commissioner – so long as that decision is supported by substantial evidence. *Hays*, 907 F.2d at 1456; *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986); *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972). It is the duty of the Commissioner, not the courts, to make findings of fact and to resolve conflicts in the evidence. *Hays*, 907 F.2d at 1456; *King v. Califano*, 599 F.2d 597, 599 (4th Cir. 1979) ("This court does not find facts or try the case *de novo* when reviewing disability determinations."); *Seacrist v. Weinberger*, 538 F.2d 1054, 1056-57 (4th Cir. 1976) ("We note that it is the responsibility of the [Commissioner] and not the courts to reconcile inconsistencies in the medical evidence, and that it is the claimant who bears the risk of nonpersuasion"). Indeed, so long as the Commissioner's decision is supported by substantial evidence under the correct legal standard, it must be affirmed

even if the reviewing court would have found differently. *Lester v. Schweiker*, 683 F.2d 838, 841 (4th Cir. 1982).

### III. DISCUSSION

Under the Social Security Act, the term "disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months...," taking into account the individual's age, education, and past work experience. 42 U.S.C. § 423(d).

The Commissioner has established a five-step sequential evaluation process for determining whether an individual is disabled. 20 C.F.R. §§ 404.1520, 416.920 (2009). At step one, the ALJ found that Mr. Beard had not performed any gainful activity since his alleged onset date. (Tr. 16 at Finding 2). At step two, the ALJ found that Mr. Beard had the following severe impairments: attention deficit disorder, impulse disorder, borderline intellectual functioning, and a mood disorder. (Tr. 16 at Finding 3). At step three, the ALJ found that none of Mr. Beard's impairments met or equaled any impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 19 at Finding 4). The ALJ determined that Mr. Beard has mild limitation of activities of daily living; mild to moderate limitation in his ability to maintain social functioning; moderate difficulty with concentration, persistence, and pace, due to easy distractibility. (Tr. 19).

The ALJ assessed Mr. Beard's residual functional capacity ("RFC"), which is defined as "what an individual can still do despite his or her limitations." 20 C.F.R. §§ 404.1520(e)-(g), 416.920(e)-(g). RFC represents an individual's maximum remaining ability to do sustained work activities on a "regular and continuing basis," which is defined as eights hours per day, five days per

week.  Social Security Ruling 96-8p at 2.  The ALJ found that Mr. Beard has the RFC to perform

work at any exertional level that did not involve stress. (Tr. 19 at Finding 5).  The ALJ subsequently

clarified that limitation and provided that Mr. Beard was limited to work that did not involve high

stress.  (Tr.  23).  The ALJ explained that this meant he was restricting Plaintiff from employment

that required working as a team, close supervision, piece work production, or assembly line work.

The ALJ indicated Plaintiff could perform basic unskilled work with simple, routine, and repetitive

tasks in a solitary work environment. (Tr. 19 at Finding 5).

At step four, the ALJ found that the Plaintiff did not have any past relevant work for purposes

of the regulations. (Tr. 23 at Finding 6). At step five, the ALJ considered the testimony of the

vocational expert, Ms. Beverly Carlton, that the Plaintiff within his restrictions could perform jobs

that existed in significant numbers in the national economy, such as laundry worker (310 positions

in North Carolina and 19,350 positions nationally), cleaner II (8,100 positions in North Carolina and

330,520 positions nationally), and garment sorter (15,510 positions in North Carolina and 387,165

positions nationally). (Tr. 23 at Findings 7-10, 209).  The ALJ considered this expert testimony, as

well as the Plaintiff's age, education, work experience, and RFC, and concluded that the Plaintiff

was not disabled within the meaning of the Social Security regulations.

Mr. Beard concedes that his RFC determination is correct, but disputes the ALJ's conclusion

at step five that he is not disabled.  Mr.  Beard contends that "a claimant who cannot handle work-

related stress cannot work." (Doc. No. 13, p. 4).  Social Security Ruling 85-15 recognizes that stress

is "highly individualized" and  requires  a thorough evaluation of the claimant on an individualized

basis.  Rather than simply restricting the claimant to performing work below a specified stress level,

the ALJ's RFC assessment must include limitations reflecting the particular conditions causing a

claimant's stress because "stress is not a characteristic of a job, but instead reflects an individual's subjective response to a particular situation." *Lancellotta v. Secretary of Health & Human Servs.*, 806 F.2d 284, 285 (1st Cir. 1986).

The Plaintiff's contention that SS Ruling 85-15 "implies" that there is "stress in all jobs" does not require a different result. The relevant inquiry is whether the ALJ included limitations in his RFC assessment reflecting the claimant's particular stress causing conditions, and whether the claimant could perform any type of work in light of those conditions. The ALJ considered the Plaintiff's testimony that he experienced stress at his previous jobs when he had to work with others, perform production-type work, and interact with superiors. (Tr. 21-22, 197-201). Of course, the Plaintiff had previously indicated that he could follow spoken instructions "very well," and that he could follow written instructions "all the way to the end, well," that he gets along with authority figures "very well," that he could handle stress "well," that he could handle changes in routine "very well," and that he had never been fired from a job because of problems getting along with other people. (Tr. 90-91, "Report" dated November 4, 2004).

The ALJ carefully considered treating psychiatrist Dr. Rudy Santoso's treatment notes, including the notation that Mr. Beard could not work in a "competitive world." (Tr. 169). The ALJ determined that this was not entirely consistent with the psychiatrist's other findings in the treatment record. (Tr. 23). For example, the ALJ noted that Dr. Santoso had repeatedly described Mr. Beard's condition as "stable" or "OK," and noted that he was "tolerating medication quite well," that his attitude was "positive," that he was "pleasant and cooperative" with "appropriate presentation," that his "thinking is clear," and that he demonstrated the ability to work part-time. (Tr. 22-23, 141, 144-147, 167-169). The ALJ credited Dr. Santoso's opinion and indicated the Plaintiff should not work

in production settings or high stress work environments. (Tr. 23). Of course, the ALJ is not required to "give any special significance to the source of an opinion on issues reserved to the Commissioner." 20 C.F.R. 404.1527(e)(3); *see, e.g., Craft v. Apfel*, 164 F.3d 624 (Table), 1998 WL 702296, at *7 (4th Cir. Oct.6, 1998).

The ALJ found that Mr. Beard's medically determinable impairments could produce symptoms he alleged, but did not find Mr. Beard's statements regarding the intensity, persistence, and limiting effects of these symptoms entirely credible to the degree alleged. (Tr. 21-22). The ALJ observed that Mr. Beard's testimony was "vague and unpersuasive." (*Id.*).

The ALJ also considered the opinions of Dr. Ben J. Williams and Dr. Robert S. Johnson, the Disability Determination Services psychologists. These consulting psychological experts considered Plaintiff's history of treatment with Dr. Santoso and Plaintiff's activities of daily living and assessed the severity of Plaintiff's functional limitations. *See* 20 C.F.R. §404.1520a.[3] They indicated that Plaintiff could understand and remember simple instructions; sustain concentration to perform simple tasks at a moderate pace; work at an adequate pace in tasks requiring low social demands; and adapt to routine changes associated with simple tasks. (Tr. 22-23, 148, 165).[4] These opinions provide substantial evidence in support of the ALJ's credibility and RFC assessment. *See Johnson v. Barnhart*, 434 F.3d 650, 655-56 (4th Cir. 2005); *and see, e.g., Frost v. Barnhart*, 2004 WL

---

[3]This regulation concerns evaluation of mental impairments and was effective on August 1, 2006.

[4]Mr. Beard's self-reported daily activities included caring for his father and his pets; caring for his personal needs; preparing simple meals; doing laundry, cleaning, and household repairs; shopping for several hours weekly; driving his car; reading; and fishing, camping, and target practice (Tr. 86-89, 96, 137).

1529286, at *5-6 (D. Me. May 7, 2004).

As required by SSR 85-15, the ALJ undertook a subjective, individualized inquiry into what employment characteristics are likely to cause Mr. Beard's stress and whether he could perform any jobs in light of those characteristics. *See, e.g., Dowty v. Barnhart*, No. 02-7103, 68 Fed. Appx. 953, 956, 2003 WL 21509142, at *2 (10th Cir. Jul. 2, 2003) (finding that the ALJ properly gave an individualized assessment of claimant's ability to handle stress when the ALJ specifically found that the claimant could not perform work requiring "understanding, remembering, and carrying out detailed or complex instructions or required more than superficial contact with the public, or that is characterized as stressful"); *Felver v. Barnhart*, 243 F. Supp. 2d 895, 906 (N.D. Ind. 2003) (finding that the ALJ was required to make findings about how claimant's stress affected his ability to deal with instructions, co-workers, supervision, and customary work pressures); *Durrett v. Apfel*, 2000 WL 680430, at *7 (S.D. Ind. Mar. 27, 2000) (finding that the ALJ did not err when precluding "high stress work" in claimant's RFC assessment, since the ALJ defined "high stress work" as involving "work with the general public, close interaction with others, detailed or complex instructions, close concentration for extended periods, fast-paced work ...").

The ALJ considered Mr. Beard's difficulty in his previous employment when he had to work with others, perform production-type work, and interact with his superiors. (Tr. 21-22, 197-201). In an effort to avoid these stress-causing conditions in employment, the ALJ limited Mr. Beard to employment involving basic, unskilled work consisting of simple, routine, and repetitive tasks in a solitary work environment, and did not require working as a team; close supervision; piece work job production; or assembly line work. (Tr. 19 at Finding 5, 208).

Considering Mr. Beard's age, education, work experience, and residual functional capacity,

the vocational expert testified that a significant number of jobs exist in the national economy that Mr. Beard is capable of performing, providing several specific examples as representative of a larger body of similar jobs, such as laundry worker, cleaner II, and garment sorter. (Tr. 23 at Findings 7-10, 209). For these three examples, the vocational expert testified that were over 23,000 jobs in North Carolina and over 700,000 positions nationally. Vocational expert testimony may provide "substantial evidence" at the fifth step of the disability analysis. *Wilson v. Califano*, 617 F.2d 1050, 1053 (4th Cir. 1980).

Based on the foregoing, the undersigned concludes that substantial evidence supports the ALJ's finding regarding Mr. Beard's residual functional capacity and his ability to perform a significant number of jobs in the national economy, as well as the ultimate conclusion that Mr. Beard is not disabled. The ALJ's findings at each level of the review process are supported by substantial evidence. *See* 20 C.F.R. §404.1520a(e). Mr. Beard has not shown any grounds for remand.

## IV. RECOMMENDATION

Accordingly, **IT IS HEREBY RECOMMENDED THAT**

1. Plaintiff's "Motion for Summary Judgment" (Doc. No. 12) should be **DENIED**;

2. Defendant's "Motion for Summary Judgment" (Doc. No. 14) should be **GRANTED**;

3. The Commissioner's decision should be **AFFIRMED**.

## V. NOTICE OF APPEAL RIGHTS

The parties are hereby advised that, pursuant to 28 U.S.C. § 636(b)(1)(c), written objections to the proposed findings of fact and conclusions law and the recommendations contained in this memorandum must be filed within ten (10) days after service of same. *Snyder v. Ridenour*, 889 F.2d 1363, 1365 (4th Cir.1989); *United States v. Rice*, 741 F.Supp. 101, 102 (W.D.N.C.1990). Failure

to file objections to this memorandum with the District Court constitutes a waiver of the right to *de novo* review by the District Court, *Snyder*, 889 F.2d at 1365, and may preclude the parties from raising such objections on appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841, 845-46 (4th Cir.1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir.1984).

Signed: July 8, 2009

David C. Keesler
United States Magistrate Judge